# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 10, 2021    Decided June 15, 2021

No. 20-3034

UNITED STATES OF AMERICA,
APPELLEE

v.

CHAUNCEY ALLAN JONES,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cr-00121-1)

*Michael E. Lawlor* argued the cause for appellant. With him on the briefs was *Nicholas G. Madiou*.

*Mark Hobel*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Elizabeth Trosman* and *Suzanne Grealy Curt*, Assistant U.S. Attorneys.

Before: PILLARD and KATSAS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*:  Responding to late-night reports of gunfire, police officers stopped Chauncey Jones in a residential neighborhood in Washington, D.C. and seized a gun from his waistband.  Jones, who had a previous felony conviction, was charged with unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Before trial, he moved to suppress the gun, arguing that the officers who seized it had lacked reasonable suspicion that he was involved in criminal activity.  The district court denied Jones's motion, and the case proceeded by the parties' agreement to a bench trial on a stipulated factual record, preserving Jones' right to appeal the denial of his motion to suppress.  The court found Jones guilty, and Jones now appeals the suppression ruling.  We affirm the district court's denial and hold that the officers who seized the gun had reasonable suspicion that Jones was involved in criminal activity.

**BACKGROUND**

On the night of April 6, 2019, the Metropolitan Police Department (MPD) alerted police officers Jasmine Turner and Brianna Ennis that its ShotSpotter system had identified the sound of gunshots in the 3500 block of 13th Street Southeast in Washington, D.C.  Appellant's Appendix (App.) 38-39.  ShotSpotter is "a surveillance network of GPS-enabled acoustic sensors" that "use[s] sophisticated microphones to record gunshots in a specific area." *United States v. Rickmon*, 952 F.3d 876, 878 (7th Cir. 2020).  The officers arrived on the block a minute and a half after receiving the alert from MPD.  J.A. 52-53.  They saw Jones walking quickly and observed that there was no one else outside on the block.  App. 51, 66. While the officers checked for victims, a dispatcher reported over their radio that citizens on neighboring blocks were calling 911 to report gunshots heard at either end of the 3500 block.  App. 66.  The officers believed these were the same shots reported

by ShotSpotter, because they had heard no additional shots since arriving on the block. App. 65-66.

Finding no victims, Turner and Ennis decided to stop Jones. App. 51, 56. They followed him around the corner onto Trenton Place, where Officer Damien Williams joined them. App. 41-42, 56, 62. Turner got out of the patrol car and pursued Jones on foot. App. 43. Jones continued to walk away as she called out to him: "Hello, how ya doin'? Hello. Excuse me! Hello. You don't hear me talking to you?" GX 1 at 03:55-04:05[1]; *see* App. 43-44. Jones was wearing a hooded jacket. *See* GX 1 at 03:55-04:05; App. 67. After ten seconds, Jones stopped and turned back toward the officers, removing the headphones he was wearing under the jacket's hood. GX 1 at 04:06. Ennis also approached. App. 63. Turner testified that Jones "kept moving, like moving a lot," App. 44, and his "hand kept moving, gravitating towards his waistband area," App. 46-47. Turner grabbed Jones's hand and told him to stop moving. App. 46-47. Williams and two other officers then converged on Jones. App. 63-64. Observing an item jostle in Jones's waistband, Williams tackled Jones and, after a struggle, recovered the item, a pistol. App. 77-80.

A grand jury indicted Jones for unlawful possession of a firearm. App. 12. Before trial, Jones moved to suppress the pistol, arguing that the police officers' stop had violated the Fourth Amendment because they lacked a reasonable and articulable suspicion that Jones was engaged in criminal activity. App. 14-17. After a hearing, the district court denied Jones's motion. App. 121-24. The court held that the ShotSpotter alert gave the officers reasonable suspicion that a crime had occurred on the 3500 block of 13th Street Southeast,

---

[1] "GX 1" was the government's first exhibit in the suppression proceedings and comprises body camera footage of the stop.

and that the lateness of the hour combined with the facts that Jones was the only person on the block when they arrived soon after the reports, that he was walking quickly away from the scene, and that he initially did not respond to Turner, gave them reasonable suspicion that Jones was involved. App. 122-23. Jones agreed to a stipulated trial, and the court found him guilty, App. 144-45, and sentenced him to 24 months in prison followed by three years of supervised release, App. 152, 154. He now timely appeals the denial of his motion to suppress, arguing that the officers lacked reasonable suspicion to stop him.

We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's ultimate determination that the officer who stopped Jones had reasonable suspicion, *United States v. Delaney*, 955 F.3d 1077, 1081 (D.C. Cir. 2020), but we review "findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by [district court] judges," *id.* at 1082 (internal quotation marks omitted).

## ANALYSIS

This appeal presents a single issue: whether the officer had reasonable suspicion to stop Jones. Under *Terry v. Ohio*, 392 U.S. 1, 27, 30 (1968), officers may stop a citizen if they are "able to point to specific and articulable facts which, taken together with rational inferences from those facts, support a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *Delaney*, 955 F.3d at 1081 (internal quotation marks omitted). A *Terry* stop, which constitutes a Fourth Amendment seizure, "occurs when physical force is used to restrain movement or when a person submits to an officer's show of authority." *Id.* (internal quotation marks and citations omitted). It is the government's

burden to show that officers had evidence to support a reasonable and articulable suspicion at the time of a stop. *Id.* at 1082. The Supreme Court has explained that such evidence must include more than mere "presence in an area of expected criminal activity." *Illinois v. Wardlaw*, 528 U.S. 119, 124 (2000).

Here, the existence and timing of the *Terry* stop are not at issue: The parties agree that the stop occurred when Jones stopped walking and removed his headphones at Officer Turner's direction. App. 122-23; Oral Arg. at 7:44-7:51, 22:55-23:00. Jones also concedes that the officers had reasonable suspicion that a gun was fired on the 3500 block of 13th Street Southeast shortly before their arrival. Appellant Br. 20; Oral Arg. at 2:55-3:25. He disputes only whether they had grounds to suspect that he had been involved. Thus, the question before us is whether the facts known to the officers at the time they stopped Jones supported a reasonable and articulable suspicion that Jones was involved in the shooting.

We conclude that the record facts support the findings of the district court. The totality of the information known to Turner when she stopped Jones sufficed to raise a reasonable suspicion. The ShotSpotter alert and dispatcher report from MPD indicated that shots were fired in the 3500 block of 13th Street Southeast. App. 38-39, 91, 121. Turner and Ennis arrived at the location of the reported gunshots within a minute and a half of the MPD call.[2] Turner testified that they saw that Jones was the only person on that block. App. 51, 66. Jones was walking quickly away from the location of the shooting. App. 44. He did not initially respond to Turner's repeated

---

[2] The record does not indicate, and the parties do not discuss, how much time elapsed between the ShotSpotter alert and MPD's call to the officers.

efforts to get his attention. App. 43-44; GX1 at 03:55-04:06. When Jones did pause and look back towards Officer Turner, reaching up in a gesture suggesting he was removing earbuds, Officer Turner could have drawn an alternative, non-suspicious inference from Jones's failing to respond and continuing to walk away from her: He could have been listening to loud music and initially failed to hear her calling out. But the district court found that when Turner commanded Jones to stop she could not see that Jones was wearing headphones, and the court determined that it was reasonable for her to treat Jones's non-responsiveness as grounds for suspicion. App. 107-08, 121-22; *see also United States v. Arvizu*, 534 U.S. 266, 277 (2002) ("A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct."). The district court viewed the bodycam footage and credited Turner and Ennis' testimony, App. 121-22, and nothing in the record suggests that that the court's findings were clearly erroneous. *See* GX 1 at 02:24-03:58.

The combination of the facts found by the district court raised reasonable suspicion. We held in *United States v. Brown*, 334 F.3d 1161, 1165-68 (D.C. Cir. 2003), that a defendant's presence in the precisely identified area where a crime has recently occurred and officers' observation of his suspicious behavior there raise reasonable suspicion. In *Brown*, officers had reasonable suspicion where witnesses pinpointed shots to a parking lot where the defendant sat in one of two occupied cars and the occupants of the defendant's car made furtive movements. *Id.* at 1165, 1167-68. We so held even though the officers did not arrive for 1¾ - 3¾ hours after the witnesses called. *Id.* at 1165 & n.1. Here, the officers arrived much more quickly, and there was no one besides Jones outdoors on the block. Jones was walking swiftly away from the site of the shots and failed to respond to Turner's requests

that he stop, all of which Officer Turner could reasonably perceive as evasive.

The precisely identified area where gunshots were heard, the officers' observations when they got out of their car and investigated the block on foot, and Jones's apparently evasive conduct distinguish this case from *United States v. Delaney*, 955 F.3d at 1085-87, in which we vacated a district court's holding that there was reasonable suspicion in otherwise similar circumstances. In *Delaney*, officers patrolling an area for gunshots on New Year's Eve "heard seven to eight gunshots coming from multiple directions, a few of which sounded particularly close by." *Id.* at 1079 (internal quotation marks omitted). After driving around for about a minute, they came across the defendant sitting in a parked car. *Id.* at 1079-80. The defendant and his companion began kissing, which the officers found "odd." *Id.* at 1080. The officers approached and ultimately recovered a gun from the car. *Id.*

We held that the officers lacked reasonable suspicion, although the question was "close," *id.* at 1079, because they had heard gunshots from multiple directions and failed to survey the larger relevant area, simply seeing "Delaney before they saw anyone else." *Id.* at 1086. And Delaney's "odd" conduct—a New Year's Eve kiss while officers approached— was not in itself furtive or evasive. *Id.* at 1087. By contrast, the gunshots reported here were pinpointed to a single block, and the officers saw that Jones was the only person on that block. Again, Officer Turner could reasonably conclude that Jones behaved evasively when he walked quickly away from the scene and failed to respond to Turner when she repeatedly called out to him.

Jones raises several objections to the district court's holding. First, he argues that his presence on the block was not

a basis for reasonable suspicion because others could have been outside when the shots were fired and escaped into a building or driven away in a car before the officers arrived. Appellant Br. 17. But officers need not rule out all innocent possibilities before making a stop. *See Arvizu*, 534 U.S. at 277. Here, Officers Turner and Ennis arrived on the block within a minute and a half of MPD's call reporting the ShotSpotter alert, and a dispatcher reported further calls from neighbors as they arrived, so the officers could reasonably infer that the shots had been fired very recently. The officers also observed Jones behaving evasively. When presence where a crime is reported to have occurred is coupled with evasive behavior, we have found reasonable suspicion even when more time has elapsed. *See Brown*, 334 F.3d at 1165-66 & n.1.

Second, Jones asserts that ShotSpotter identifies only a "radius of unspecified size," so the officers could not know that he was on the precise block where shots were fired. Appellant Br. 19 (quoting *United States v. Carter*, 2020 WL 3893023, at *6 (D.D.C. 2020)). But the district court accepted the government's factual claim that ShotSpotter identified the 3500 block of 13th Street Southeast as the site of the gunshots. App. 116, 121. Jones offers no reason why that finding was clearly erroneous, and we cannot disturb the district court's factual finding on the basis of his bare contrary assertion.

Third, Jones contends that he was not walking quickly when the officers saw him, Appellant Br. 19, again contrary to the officers' testimony and district court's finding, App. 121. We have reviewed the body camera footage and concluded that the district court's finding was not clearly erroneous. *See* GX 1 at 03:50-04:10. In any case, even if Jones' pace was not suspicious, his initial failure to respond to Turner was evasive conduct that, together with the other facts, supports the district court's holding.

Finally, Jones suggests in passing that the officers had no reason to think the gunshots were fired by someone outdoors rather than indoors, so his presence outdoors on the block could not be grounds for reasonable suspicion. Appellant Br. 5. But as the government explains, the fact that residents of neighboring blocks could hear the shots made it more likely that they were fired outside. Appellee Br. 21-22. The district court agreed, App. 122, and we give due weight to its determination that the officers' inference was reasonable, *Delaney*, 955 F.3d at 1082. The officers' evidence sufficed to provide reasonable suspicion even if it left some residual possibility that the shots were fired indoors. *See Arvizu*, 534 U.S. at 277.

For the foregoing reasons, we affirm the district court's denial of Jones's motion to suppress.

*So ordered.*